0–1 B – Do we have Mr. Thompson here? – Hang around. – Please. Here. The next case is the Edward D. Aeoli Trust v. Vigilant Video, 2014–17–14. Mr. Thompson, I have here that you wanted to break up your 15 minutes, 5 and 10. – That would be good. – So, we'll set it at 5, and obviously, if you wanted to run over to 5, that's all right. You have 15 minutes total. – Please, the court, your Honor, I'm here also today with Ms. Amy Bogren on behalf of our client, Vigilant. Please, the court, your Honor, I'm here today on a contract case, essentially which dealt with intellectual property, but really comes down to the construction of the contract which was settled between an affiliate of our client, DRN, our subsidiary. – In other words, the case breaks down to the relative importance of the affiliate provision versus the other defendant's provision. – Absolutely. And so, to get right to the heart of the matter, we are named as an affiliate. The definition of affiliate seems incredibly clear. Our release is the broadest release that could possibly be contemplated. – Okay, can I just, one further background principle, that the way that this case comes to us, for you to win, you have to persuade us that the contract unambiguously requires your result. It's not enough for you to say, well, this is actually ambiguous on its face, let's have a trial. – No, actually, it's not ambiguous, and I agree with what you said. I agree with that statement. – Okay. – Unambiguously. I'd point out to the court... – And that's because you've set up a final judgment so that you have to prevail on your motion for summary judgment. – Absolutely. I would note for the court, no ambiguity was pled after I amended my complaint and added the release, the covenant not to sue, and the license ambiguity was not then pled in response to that. I don't know that it's ever been raised in the matter. However, I think of greatest importance to mine, as you say, prevailing unequivocally is the integration clause which is contained in the contract, which essentially seems to be one of the more, again, as I said, distinctly comprehensive integration clauses that could be contained. There's a review of the Texas Supreme Court cases regarding that. They seem to be clear that once there's been an integration clause, that the first inquiry with a contract is what are its terms, and then if the contract is integrated... – The integration clause simply means no extrinsic evidence, look at the contract. And the other defendant's provision says except as specifically set forth herein, plaintiffs can go against other defendants in the litigation. Where is it specifically set forth herein that you can continue to go after this other defendant? – It's not specifically stated. What's specifically stated is that I'm an affiliate of DRM and that all affiliates are completely released, that we have a covenant. – That's half right. It does specifically say that all affiliates are released. It does not specifically say that you're an affiliate. – No, and that is the argument, I notice, of my opposing counsel, that I must be specifically named, and it's specifically the lower court said... – Isn't that one reasonable way of giving meaning to the word specifically? – It is one way to do that, however... – But if that's right, then don't you lose because at best the thing is ambiguous? – No, because essentially the word specifically in that clause is intended to refer to the specific language preceding the clause, those that grant the release. – Well, maybe yes, maybe no, and intent is not the question if we're in an ambiguity, lack of ambiguity land. – And if this contract is ambiguous, does it then need to go back for a trial? – That's why I asked you the first question. You have not sought a trial on how to resolve the ambiguity. – But construction of contracts is a question of law for the court. It is not one for a jury. – Well, the Texas law says, like every other law, when you get an unambiguous answer out of the language of the contract, the court decides it, and if you don't, then it becomes a question of party's intent for trial, for the fact finder. But you've given that latter piece up. That's why it seems to me actually really quite important that the very, the sole ground on which you have premised your argument is you win because the contract is unambiguously for you. And what I'm saying is the word specifically has wiggle room in it. – May I would refer the court, however, to the clause that precedes it immediately and suggest that that that wiggle room has been essentially removed. I look at the contract myself and notice that the other defendant's clause, number two, is what is being referred to, but if one were to step forward just to the covenants clause above it, in paragraph one, no other rights and no exhaustion, I note where it says that the parties agree that except as set forth in article two above. Again, except as set forth in two, now article two is identified, and that is the one that contains the lease license covenant. The license and covenant set forth in this agreement do not grant rights to any third party for any method, system, product, services, and or components supplied by such third party to any person other than to or on behalf of defendants and its affiliates. The parties further agree that except as set forth in article two above, this agreement does not limit or extinguish plaintiff's right to seek to enjoin, control, or extract royalties or other damages with respect to any method, systems, product, services, and or components supplied by such third party to any person other than to or on behalf of defendants and its affiliates. So you see above, immediately in that clause, it says yes, they may continue to pursue, but defendants and its affiliates are out of this transaction, and it's very specific. And as I read the Texas case law, language that precedes language in a contract tends to get preferential treatment. And so I see right above it that the affiliates are specifically named when they speak in the contract about the rights of what the plaintiff may continue to pursue. It's only that the word affiliates is not in my paragraph, and yet affiliates is immediately above it when it talks about what rights they may do. Is exhibit A the stipulated motion for dismissal? That's part of the settlement agreement? Absolutely. And that dismisses only DRN, not VIGILANT. And why would it dismiss VIGILANT when DRN's counsel is not ours? How could DRN's counsel possibly ethically have entered into any agreements on our behalf or dismissed our counterclaims without my signature? They are our subsidiary, not my counsel. They would have no authority to have dismissed any of my actions. So the agreement implicitly, in fact, required the dismissal, but the only dismissal stipulated motion was as to DRN, but not as to VIGILANT. It would seem the only ethical one. I don't know where I am on time, but then in going forward... Well, you're beyond five you wanted to use, but you do have plenty of time. I'm going to break for a moment. Fine. Mr. Buter, is it? Yes, Your Honor. May it please the court, Eric Buter for the respondents, and I'm going to call it GTC for short, and a wholly. The court should affirm the district court's denial of VIGILANT's motion for summary judgment because we believe that the contract as a whole and the other defendant's provision in particular reflect the intent that VIGILANT was not to benefit from the agreement and in particular the license release and covenant not to sue. The other defendant's provision is the only provision in the contract that talks about other defendants such as VIGILANT. It clearly indicates an intent to preserve the status quo and does provide an exception, but as the court has noted it has the very limiting language except as specifically set forth herein. Let me ask you, why do you think that that is possible to characterize as very limiting? Well, I think because it has to be specifically set forth herein. Other language that has an exception preamble, if you will, talks about it as provided otherwise. But why isn't the affiliate clause pretty darn specific? It's not. Whoever the affiliates happen to be, including future ones. It's a very general provision. It is not entity specific at all. It describes corporate relationships in the abstract, whereas this provision is the one provision that deals with who is not to be benefited under this agreement,  and the literal language is any other defendant, including VIGILANT, is not affected by this agreement unless specifically set forth herein. So VIGILANT is clearly included in the language that GTC's claims against it are not affected by the settlement unless it can be established that the agreement, looking at it broadly or that provision specifically, but let's take a look at the agreement as a whole, specifically sets forth something to the contrary. And the general definition of affiliates, which again is not just general, it is abstract, if you will. But why isn't the specific provision, the one in Article 2, Paragraph 1, plaintiffs hereby release defendant and each of their affiliates, blah, blah, blah? Again, because in trying to shoehorn VIGILANT into the affiliates language, you're...  Oh, no, they clearly became an affiliate shortly before the settlement agreement. So what's missing to satisfy the specifically provided herein? When you take a look at the second sentence of the other provision, other defendant's provision, that specifically says that no consideration relating to GTC's claim against VIGILANT was given. That is, the parties clearly stated that any consideration given in this agreement, none of it is for compensation to GTC for its claims against any other defendant. And that sentence is unequivocal, no wiggle room one way or the other on that. And we believe that clearly shows the party's intent, which is the overall goal here, to not allow any other defendant to benefit from the language  VIGILANT was clearly an active defendant in the case. It was not mentioned specifically in the other defendant's provision. And the general language of the affiliates language simply is not specific enough, when the language calls for specificity, to divine an intent to allow VIGILANT to be included in the license and release provided by the agreement. And then when you look at the fact that the dismissal form and the one that was actually filed did not mention VIGILANT, that's further evidence in terms of looking at the contract as a whole that there was no intent to benefit VIGILANT here. And although DNR's counsel did not represent VIGILANT, certainly GTC could have stipulated to dismiss not just DRN, but also VIGILANT, if it was the intent of the parties to grant VIGILANT the benefits under this contract. In other words, your view was that it specifically means that VIGILANT had to have been named. Either by name or by some other reference that clearly identified it as a defendant that is being released. Of course, affiliates included future parents. No, we do not deny that VIGILANT qualifies as an affiliate. We don't deny that. But what we say is that when you look at... That's just not specifically. It's a generic abstract concept. And when you look at the specific language of the other defendant's provision, which again says no compensation is intended for GTC's claims against any other defendant, which includes VIGILANT, that is very clear language as to what the party's intent was. When you couple that with the stipulation and the fact that VIGILANT isn't mentioned at all by name or some pseudoname, that reflects to me a clear intent that VIGILANT was not to benefit from this contract. Mr. Thompson mentioned the integration clause. What's the relevance of that clause to our decision? I think what it says is that the parties cannot vary the terms of the agreement by something extraneous to the agreement. But I disagree with VIGILANT's counsel on the notion that the court must blind itself to the surrounding circumstances regarding the negotiations. And when you look at those surrounding circumstances, not to vary the terms of the agreement, but to understand what the thinking of the parties was as they negotiated this, it becomes even more abundantly clear that the parties did not intend to benefit VIGILANT. That's a slippery slope from your standpoint. In talking about surrounding circumstances, you want to focus on that other defendant's provision. I agree. I think that's where the analysis should end. You only need to look at surrounding circumstances if there's still some reasonable question about what the party's intent was. We don't think there is any reasonable question. We think that it is clear. But as to your question about ambiguity, although the parties can claim that the contract is not ambiguous, the court can certainly conclude otherwise as a matter of law. It's similar to the parties saying that they don't think that a claim term needs further construction, but if the court believes that it does, then it has to be construed and interpreted. So the fact that it's a question of law doesn't mean that a court couldn't find it ambiguous. And furthermore, when you look at the failure, I said, at the failure to mention VIGILANT anywhere in this agreement, it belies the notion that the parties intended to let VIGILANT go, even though the parties acknowledged that no compensation was given to compensate GTC for its claims against VIGILANT. All of those facts, I think, tip strongly in favor of viewing that the intent of the parties was the only party being released was DRN or an affiliate that was not an other defendant, that the other defendant clause is the one specific clause dealing with this issue, and VIGILANT has not shown that the exception language specifically set forth herein is satisfied by that, again, vague, abstract concept of affiliate. That was not the intent of the parties as the words show and as the surrounding circumstances show. Thank you, Your Honor. Thank you, Mr. Butha. Mr. Thompson has some time left if he needs it. Thank you, Your Honor. Just to go briefly for a moment to the last comment by Mr. Butha dealing with ambiguity, the court, of course, has the authority to do anything. You can't consider the ambiguity, but why would we resolve an ambiguity in favor of a party that never pled it? When we, after the settlement by DRN, amended our complaint, amended it and changed and pled release, pled the covenant, pled the license, no answer came back with this is ambiguous and he cannot do that. Now he wants ambiguity and he wants it to resolve in his favor, and we say excuse me. You have to plead ambiguity and you filed the complaint, right? And you say the complaint is patent infringement and other things, right? Actually, we're the defense. You're the defense. They filed the complaint. You file a motion saying we have a contract that entitles us to prevail. And they say on motion for summary judgment, no, you don't. So when Judge Gilstrap was done with that ruling, that matter is going to trial. Yes. And then you do whatever you do to arrange for there to be a final judgment in which you're not going to actually have a trial. Yes. So I'm not sure what the role of pleading is. When Judge Gilstrap was done with his ruling, you have a contract defense that is now presents a triable issue of fact. Correct. I believe that is correct. And essentially the ambiguities I spoke of, I've not brought a citation that specifically states that the failure to raise ambiguity is fatal, simply that ambiguity would be a defense to our counterclaim. We raised in our answer release and license as affirmative defenses, but the covenant not to sue as an affirmative counterclaim seeking damages. Certainly it would be the duty then of the plaintiff to defend that claim for relief with at least what their defenses were. And if ambiguity be one of them, then to say so then, except it does not come in to their reply to the counterclaim. And so in going to trial, are we going to allow a defense that has never been pledged to be brought up during the trial? This, of course, would be at the discretion of the court. But again, the district court held that the agreement was not a model of clarity, but said that it was a bridge too far to cross to say that we must be specifically mentioned. And yet I think counsel knows, as I do, we write all our releases extremely broadly. I myself have mentioned in the release attorneys, but not specifically as Roy Thompson. But the question would be then, was Roy Thompson released, if not specifically named? And so I do write all my releases incredibly broadly, but I must say this is one of the broadest that I've ever encountered. But I would just go back for a moment to the integration clause because I note that Mr. Bluther, he keeps talking about this contract rather than what it says. And the integration clause says, no oral explanation or oral information by any party thereto shall alter the meaning or interpretation of this agreement. What I've heard from him is those oral things. Look to the surroundings. Look what the facts and circumstances were. And it was highly disturbing when he said that shortly before the settlement, shortly before, that we became the parent court. Not true. One looks at the brief and the statement of facts by counsel himself. He says that negotiations began in March with no date. But if one examines in the abstract or in the documents that were agreed to, the stock ledger, Vigilant became the parent on March 2nd of 2012. If he began negotiations in March of settlement, he would have had to have begun them on the 1st of March. But the settlement does not occur until May 12th, and we are now the parent for all that period of negotiation. He then at other times in the brief in a footnote says the negotiations began in February of 2012. And yet that fact is contrary to his own statement of facts. His footnote contradicts his own statement of facts. These types of discrepancies become disturbing when he is asking the court to rely on the facts and circumstances surrounding the contract as he represents them. I refer the court to footnote 2 where it quotes, for example, Vigilant served its invalidity contentions on February 2nd, 2012, and was in the midst of the claim construction process when the DRN settlement was being negotiated. February 2nd? No. His statement of facts says negotiations began in March of 2012. And so we have differing facts as they are presented. It's disturbing to me. However, am I within the zone here? All right. So your lights in front of you should indicate that you have at least 40 seconds left if you need it. Thank you very much. I did not notice that and I appreciate it. Most disturbing to me about this is contained in the brief at page 28 which says during the settlement negotiations, Plaintiff's counsel specifically inquired of DRN's counsel whether Vigilant was interested in discussing a group settlement and refers us to page of the appendix 258. I go to page 258 and there is no such evidence. In fact, it's the citation to another case. DRN's counsel responded by stating, and this is a quote in their brief, that DRN, our subsidiary's counsel, stated, the impression that Vigilant has significantly different views on settlement than DRN does, even though they are working together in the marketplace. That is accurate but contained in an email on April 4th and that's in the appendix at 115. But the next sentence of the brief says, the preliminary indication from Vigilant, and I'm quoting now, remains that they are not interested in discussing settlement and that, quote, I have to proceed with the assumption they are not interested. Appendix 257 to 258, not only is that quote not there, there is no document to support it. And so you see much of the surrounding circumstances here are the creation of opposing counsel. Thank you, Mr. Thompson. I think we have your argument. Thank you. You can trust that we'll be vigilant in trying to decide the case correctly. Thank you very much. The case is taken under advisement.